UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>ABSHER CONSTRUCTION CO.; ELCON CORPORATION; JASON P. DECKER; and DEBRA A. DECKER,<br><br>Defendants. | C23-1303 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion for partial summary judgment, docket no. 50, brought by defendants Jason and Debra Decker (the "Deckers"). The Deckers seek summary judgment on Plaintiff KeyBank National Association's ("KeyBank's") sixth cause of action, asking the Court to find that KeyBank is precluded from asserting an interest in a certain contract balance based on a prior state court order. Having reviewed all papers filed in support of, and in opposition to, the motion, and having considered the oral arguments of counsel, the Court enters the following order.

**Summary of the Dispute**

This action is related to a King County Superior Court receivership action (Case No. 23-2-14983-1) (the "Receivership Action"). An electrical subcontractor, Elcon Corporation ("Elcon"), defaulted on a secured loan from KeyBank, and KeyBank then sought to have a general receiver appointed over Elcon's assets. The "Absher Project" was one of Elcon's bonded projects at the time. Defendant Absher Construction Co. ("Absher") contracted with Elcon as a subcontractor on the Absher Project, and Elcon's obligations for the project were bonded by Travelers Casualty & Surety Company of America ("Travelers"). In the Receivership Action, KeyBank and Travelers disputed whether the contract balances from Elcon's bonded projects, including the balance on the Absher Project, should be included in the "Receivership Estate." The state court agreed with Travelers and excluded the contract balances from the Receivership Estate, allowing Travelers to finish the bonded projects without the receiver's involvement.

In its sixth claim in this action, KeyBank seeks a declaratory judgment that it has a "valid and perfected first priority security interest in the [remaining balance from the Absher Project], which has priority over Travelers' interest therein, and that Absher must turnover and pay [the balance] to KeyBank." Am. Compl. ¶ 74 (docket no. 8). Travelers has assigned its interest in the remaining balance from the Absher Project, as well as any other claim against KeyBank or Absher relating to the Absher Project, to the Deckers, who now argue that KeyBank is precluded from seeking declaratory judgment because the issue was already decided in the Receivership Action. For the reasons that follow, this Court finds that KeyBank's sixth cause of action is not precluded because the state court

never determined issues of priority as they relate to the remaining balance on the Absher Project.[1]

**Background**

The disputes in this case arose out of a secured $7 million line of credit issued by KeyBank to Elcon. *See* Conder Decl. ¶ 2 (docket no. 57). KeyBank and Elcon executed a commercial security agreement that defined the "Collateral" to secure the loan as including "[a]ll … accounts [and] other rights to payment . . . and all products and proceeds . . . of or relating to the foregoing property." *See* Commercial Security Agreement, Ex. 4 to the Mot. for Partial SJ at 98 (docket no. 50-5). KeyBank subsequently perfected its security interest by filing a UCC-1 financing statement. *See id.* at 105 (docket no. 50-5).

On April 24, 2023, KeyBank issued a notice of default that accelerated the maturity of the loan. Conder Decl. ¶ 5 (docket no. 57). KeyBank and Elcon worked to resolve the default of the loan, and KeyBank expected Elcon to receive approximately $7.5 million from the Absher Project. *Id.* ¶¶ 5–6. Without KeyBank's knowledge, Elcon and Absher entered into a settlement agreement that, among other things, specified a revised amount due to Elcon for the project. *Id.* ¶¶ 7–8 (docket no. 57). Under the agreement, Absher made a first payment to Elcon of $2,500,000 (the "First Absher

[1] A related case in this District, *Travelers Casualty and Surety Company of America v. Decker*, 24-cv-0253 TL (W.D. Wash. 2024), is now on appeal before the Ninth Circuit (Case No. 25-7248). In that case, KeyBank's asserted right to the remaining balance from the Absher Project was not established and remains disputed. That issue is the main issue now pending before this Court.

Payment”), and Absher agreed to make a second payment to Elcon of $3,470,000 (the “Second Absher Payment”) subject to a $250,000 holdback amount.[2] *See* Subcontract Change Order, Ex. D to Conder Decl. (docket no. 57-4). Rather than depositing the First Absher Payment into its KeyBank account, Elcon received the money at a newly opened Umpqua Bank account, and Elcon used the funds to pay third parties. Conder Decl. ¶¶ 6–7 (docket no. 57). KeyBank later discovered the undisclosed account and then sent notices under UCC 9-607 to Absher and other “account debtors,” directing that future payments be made to KeyBank, not Elcon. *Id.* ¶ 7 (docket no. 57). In light of competing claims, Absher is currently withholding the Second Absher Payment.[3] *Id.* ¶ 8.

**A. <u>The State Court Receivership Proceedings</u>**

**1. <u>KeyBank’s Commencement of a Receivership Action</u>**

On August 11, 2023, KeyBank initiated a receivership action in King County Superior Court. *See* Conder Decl. ¶ 9 (docket no. 57); Order Appointing General Receiver, Ex. 13 to Mot. for Partial SJ (docket no. 50-14). KeyBank sought to have the contract balances from Elcon’s bonded projects included in the Receivership Estate; Travelers objected to the appointment of a receiver. *See* Travelers’ Objection to Appointment of a Receiver, Ex. 5 to Mot. for Partial SJ at 154, 156 (docket no. 50-6 at 3,

---

[2] The conditions precedent for the Second Absher Payment are disputed. *See* Mot. for Jdgmt. on the Pleadings (docket no. 65).

[3] Absher currently holds the Second Absher Payment in a separate account, and it has offered to deposit this contested amount into the Court’s Registry pending resolution of this matter. *See* Reply in Support of Mot. for Jdgmt. on the Pleadings at 1–2 & n.1 (docket no. 71).

5). Travelers also argued that Elcon (and thus, KeyBank through its lien) only had an interest in the contract balances "subject to receipt of any excess funds after the completion of the subcontract work." *Id.* at 159 (docket no. 50-6 at 8).

Travelers later filed a supplemental objection to the appointment of a receiver and submitted a proposed order. *See* Supplemental Objection, Ex. 10 to Mot. for Partial SJ at 275 (docket no. 50-11 at 21). KeyBank opposed Travelers' proposed order because it "carve[d] out receivables owed on specific bonded contracts." *See* KeyBank's Reply to Travelers' Objection, Ex. 12 to Mot. for Partial SJ at 308 (docket no. 50-13 at 4).

**2. Appointment of a General Receiver**

On September 19, 2023, the state court appointed a general receiver. *See* Order Appointing General Receiver, Ex. 13 to Mot. for Partial SJ (docket no. 50-14). As to the First Absher Payment, the state court found that Elcon "wrongfully and secretly diverted, deposited and paid out to third parties approximately $2.6 million of KeyBank's Cash Collateral[.]" *Id.* ¶ 14 (docket no. 50-14 at 6). As to the Second Absher Payment, and particularly relevant here, the state court found that:

> Pursuant to that certain Commercial Security Agreement, dated April 30, 2019, (the "KeyBank Senior Security Agreement"), the KeyBank Secured Claim is secured by a security interest (the "KeyBank Lien") in substantially all of the existing and future acquired assets of Defendant Elcon (the "Assets" or "KeyBank Collateral", which defined terms, as used herein, specifically *exclude* any and all remaining contract balances on Travelers Bonded Projects and Markel Bonded Projects).

*See id.* ¶ 11 (docket no. 50-14 at 5) (emphasis in original). This language was the language in Travelers' proposed order, which KeyBank had opposed. *See* Ex. B to Supplemental Objection, Ex. 10 to Mot. for Partial SJ at 275 (docket no. 50-11 at 21);

KeyBank's Reply to Travelers' Objection, Ex. 12 to Mot. for Partial SJ at 308 (docket no. 50-13 at 4). In its order, the state court also issued an automatic stay pursuant to RCW 7.60.110. *See* Order Appointing General Receiver ¶ 21, Ex. 13 to Mot. for Partial SJ at 319 (docket no. 50-14 at 7).

**3. <u>KeyBank's Motion for Reconsideration</u>**

KeyBank then moved for reconsideration of the state court's order appointing a receiver. *See* KeyBank's Mot. for Reconsideration, Ex. 14 to Mot. for Partial SJ (docket no. 50-15). KeyBank warned that if the order appointing a receiver was not clarified, the order could be incorrectly interpreted "as a final adjudication on the merits that Elcon and KeyBank have no interest in the bonded contract balances." *Id.* at 5, Ex. 14 at 338 (docket no. 50-15 at 6).

Travelers responded, opposing KeyBank's request and arguing that the state court's order "specifically excluded the remaining contract balances on bonded projects from the assets over which the Receiver was authorized to take control." Travelers' Resp. to KeyBank's Mot. for Reconsideration at 2, Ex. 15 to Mot. for Partial SJ at 365 (docket no. 50-16 at 3). Travelers explained that it was "highly unlikely" that there would be excess funds from the bonded projects, making further action unnecessary. *See id.* at 4, Ex. 15 at 367 (docket no. 50-16 at 5). In reply, KeyBank argued that any excess funds should still be subject to the Receivership Estate. *See* KeyBank's Reply in Support of Mot. for Reconsideration at 1, Ex. 17 to Mot. for Partial SJ at 381 (docket no. 50-18 at 2).

The state court denied KeyBank's motion for reconsideration with little comment. *See* Order Denying Mot. for Reconsideration, Ex. 18 to Mot. for Partial SJ (docket no. 50-19).

**4. KeyBank's Motion for Relief from the Stay in the Receivership Action**

In March 2026, KeyBank moved to lift the state court's automatic stay to pursue its federal claims in this case. *See* KeyBank's Mot. for Relief from Stay, Ex. 20 to Mot. for Partial SJ (docket no. 50-21). Jason Decker, who was a shareholder of Elcon, objected to KeyBank's motion. Travelers had previously assigned its interest in any claims in this federal action to the Deckers as part of a settlement in other litigation. *See* Stip. Mot. to Lift Stay at 2 (docket no. 42). In response to Jason Decker's objections, KeyBank argued that the state court "ha[d] never ruled that KeyBank somehow lost its security in Elcon's receivables, bonded or not." KeyBank's Reply in Support of Mot. for Relief from Stay at 4, Ex. 22 to Mot. for Partial SJ at 483 (docket no. 50-23 at 5).

The state court denied KeyBank's motion. *See* Order Denying KeyBank's Mot. for Relief from Stay, Ex. 24 to Mot. for Partial SJ (docket no. 50-25). The court ruled that:

> On an extensive and developed record, this Court has already decided that the contract balances on the bonded projects are not 'Assets' subject to 'KeyBank's Lien' (Finding of Fact ¶ 11) and further excluded Travelers and Markel's receipt of the contract balances on the bonded projects from the automatic stay (Finding of Fact, ¶ 21; Order ¶ 11.) The Order Appointing Receiver [has] been the law of this case since September 2023[.]

*Id.* at 2, Ex. 24 at 493 (docket no. 50-25 at 3). The court went on to explain that because of its past ruling, "there [wa]s no further basis to order further relief to KeyBank

concerning *Assets that were never part of the Receivership Estate* and which were never subject to the automatic stay." *Id.* (emphasis added).

**B. <u>The Federal Action</u>**

In August 2023, before the state court appointed a receiver, KeyBank brought this federal action, filing an amended complaint on September 8, 2023. *See* Am. Compl. (docket no. 8). KeyBank brought a number of claims, including one for declaratory relief, seeking a declaration that it is entitled to the Second Absher Payment. *See id.* ¶ 74. In October 2023, after the state court appointed a receiver, the parties in this case filed a notice of automatic stay pursuant to the order. *See* Notice of Automatic Stay (docket no. 18). This Court then stayed this case as the receiver began collecting Elcon's property.

In May 2026, after the state court denied KeyBank's motion to lift the stay, the parties sought to lift the stay in this case, and this Court granted that request. *See* Min. Order (docket no. 44). The Deckers then brought this motion for partial summary judgment, docket no. 50, arguing that KeyBank's claim for declaratory relief as it relates to the Second Absher Payment is precluded by the *Rooker–Feldman* doctrine, collateral estoppel, res judicata, and full faith and credit.

**<u>Legal Standard</u>**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006).

## **Discussion**

### **A. The *Rooker–Feldman* Doctrine**

The *Rooker–Feldman* doctrine stands for the principle that "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered *before* the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1744 (2026) (emphasis added) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). As conceded by counsel for the Deckers during oral argument, the *Rooker–Feldman* doctrine does not apply here because the state court issued its order appointing a general receiver *after* KeyBank brought this action.

### **B. Collateral Estoppel**

A party seeking collateral estoppel (also known as issue preclusion) must show "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an

injustice on the party against whom it is applied." *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004).[4] Collateral estoppel is only applicable when all four factors are present. *See San Telmo Assocs. v. City of Seattle*, 108 Wn.2d 20, 22–23, 735 P.2d 673 (1987). KeyBank argues that neither of the first two factors are present here, and this Court agrees. *See* Resp. to Mot. for Partial SJ at 19–21 (docket no. 56).

**1. Identical Issues**

Whether an identical issue was presented in the Receivership Action depends on the interpretation of the state court's order appointing a receiver. The Deckers argue that the state court ruled that KeyBank does not have an interest in the Second Absher Payment. *See* Mot. for Partial SJ at 6–22 (docket no. 50). KeyBank challenges the Deckers' interpretation, arguing that the state court's ruling "exclude[d] Elcon's bonded receivables from the Receivership estate" and "was not an adjudication that KeyBank's Security Agreement . . . did not include a grant of a security interest in all of Elcon's receivables." *See* Resp. to Mot. for Partial SJ at 15 (docket no. 56).

When the state court defined the terms "Assets" and "KeyBank Collateral" for the purpose of the Receivership Estate, it excluded the contract balances on the bonded projects. This definitional ruling was not an adjudication of KeyBank's and Travelers'

---

[4] "[A] federal court must give to a state court judgment the same preclusive effect as would the courts of the state in which it was rendered." *See Ozone Int'l, LLC v. Wheatsheaf Grp. US, Inc.*, 2021 WL 1208673, at *3 (W.D. Wash. Mar. 31, 2021) (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003)).

competing interests in the project. As Travelers acknowledged before the state court, *a "determin[ation of] the priorities between creditors of Elcon, including KeyBank and Travelers, [wa]s beyond the scope of th[e] petition" to appoint a receiver*. *See* Travelers' Objection to Appointment of a Receiver at 6, Ex. 5 to Mot. for Partial SJ at 158 (docket no. 50-6 at 7) (emphasis added). Travelers' view was correct. The state court did not determine matters of priority or the related amounts due to Elcon, Travelers, and KeyBank; rather, the state court excluded the contract balances from the Receivership Estate entirely. This allowed Travelers to use the contract balances "to satisfy the respective bonded obligations of . . . Elcon" without the involvement of the receiver. *See* Order Appointing General Receiver ¶ 21, Ex. 13 to Mot. for Partial SJ at 319 (docket no. 50-14 at 7).

Travelers' filings in the state court proceedings bolster this interpretation. In its briefing before the state court, Travelers conceded that once the bonded projects were complete and the sureties' obligations were paid, then "Elcon [would] get[] what's left over." Travelers' Objection to Appointment of a Receiver at 7, Ex. 5 to Mot. for Partial SJ at 159 (docket no. 50-6 at 8). Given this concession, the state court could not have intended to hold that Elcon was not entitled to any leftover funds and that KeyBank's lien did not apply to those funds.

The state court also recognized that KeyBank's lien extended to the funds from the Absher Project. Specifically, the state court found that Elcon "wrongfully and secretly diverted" the First Absher Payment, which the state court described as "KeyBank's Cash Collateral[.]" *See* Order Appointing General Receiver ¶ 14, Ex. 13 to Mot. for Partial SJ

at 318 (docket no. 50-14 at 6). The Deckers' contention that KeyBank has no interest in the remaining funds from the Absher Project (*i.e.*, the Second Absher Payment) is inconsistent with the state court's finding concerning the First Absher Payment.

The Deckers focus on the state court's later statement that it "has already decided that the contract balances on the bonded projects are not 'Assets' subject to 'KeyBank's Lien' (Finding of Fact ¶ 11)." *See* Order Denying KeyBank's Motion for Relief from Stay at 2, Ex. 24 to Mot. for Partial SJ at 493 (docket no. 50-25 at 3). But just as the state court limited its original exclusion of the contract balances to the "defined terms" used in the order, the state court in this later order deliberately used quotation marks for "Assets" and "KeyBank's Lien," emphasizing that its rulings were limited to the defined terms for the Receivership Estate. As the state court later concluded, the contract balances were simply "Assets that were never part of the Receivership Estate." *See id.* In short, the state court's rulings were limited to a determination of what assets were included in the Receivership Estate, rather than a final determination of the competing priorities and property interests in the remaining contract balances.

The first factor for collateral estoppel is not met because the issues decided by the state court are not identical to the issues of priority presented in this action.

**2. <u>Finality</u>**

The second element of collateral estoppel requires finality, and Washington courts take "a pragmatic approach to determine finality for purposes of collateral estoppel." *See Pac. Boring, Inc. v. Staheli Trenchless Consultants, Inc.*, 138 F. Supp. 3d 1156, 1163 (W.D. Wash. 2015) (quoting *Cunningham v. Washington*, 61 Wn. App. 562, 566–67, 811

P.2d 225 (1991)), *aff'd*, 708 F. App'x 324 (9th Cir. 2017); *see also Chau v. City of Seattle*, 60 Wn. App. 115, 120, 802 P.2d 822 (1991) ("'[A]bsolute' finality is not required for collateral estoppel to operate."). Under this approach, finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Cunningham*, 61 Wn. App. at 567 (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961)). Factors used to assess finality include, (1) "whether the prior decision was adequately deliberated," (2) "whether it was firm, rather than tentative," (3) "whether the parties were fully heard," (4) "whether the court supported its decision with a reasoned opinion," and (5) "whether the decision was subject to appeal or in fact was reviewed on appeal." *Id.*

Application of the factors here results in the conclusion that the state court's order was not final. The first factor is the only one that weighs toward finality because the order appointing a receiver was adequately deliberated by the state court as a general matter. The second factor, however, weighs against finality because the order appointing a receiver remains subject to modification "in light of changed circumstances," making the order less firm than other rulings that are generally granted preclusive effect. *See Bero v. Name Intel., Inc.*, 195 Wn. App. 170, 179–80, 381 P.3d 71 (2016) (explaining that "a receivership is an equitable remedy" and "the court retains the authority to modify the order appointing the receiver in light of changed circumstances" and may "change its mind"). In other words, orders appointing receivers are "interlocutory" and subject to change. *See Balfour-Guthrie Inv. Co. v. Geiger*, 20 Wash. 579, 580, 56 P. 370 (1899).

The third factor also weighs against finality; despite the parties' extensive briefing in the Receivership Action, KeyBank was not fully heard on the issue of its entitlement to the Second Absher Payment. Because issues related to KeyBank's interest in the Second Absher Payment were beyond the scope of the state court's purview in the Receivership Action, KeyBank could not have been fully heard on the issue.

The fourth factor also weighs against a finding of finality. The state court thoroughly explained why a receiver was warranted, but across three different orders, the state court did not explain why the contract balances on the bonded projects were excluded from the Receivership Estate. Similarly, the fifth factor weighs against a finding of finality because orders appointing a receiver are only subject to discretionary interlocutory appeal before final judgment, and the order here was not reviewed on an interlocutory appeal.[5] *See Feick v. Brutsche Fam. Revocable Tr.*, 20 Wn. App. 2d 1058 (2022) (discussing the appealability of orders appointing receivers).

On balance, the factors weigh against finality, and without a final decision by the state court, collateral estoppel does not apply.

**C. <u>Res Judicata</u>**

A threshold requirement for res judicata (also known as claim preclusion) is "a

[5] The Deckers assert that "[t]he resolution of priority was . . . made a verity on appeal to the Washington Court of Appeals." *See* Mot. for Partial SJ at 2 (docket no. 50). The Deckers overemphasize the relevance of this appeal. In *In re Elcon Corp.*, 35 Wn. App. 2d 827, 579 P.3d 807 (2025) the Washington Court of Appeals reviewed the state court's order compelling Elcon to turn over emails to the receiver. The order appointing a receiver and the specific issue of KeyBank's interest in the Second Absher Payment was not an issue before the Washington Court of Appeals. Rather, the discretionary appeal related solely to the receiver's entitlement to emails.

valid and final judgment on the merits in a prior suit." *Carter v. MultiCare Health Sys.*, 31 Wn. App. 2d 755, 771, 553 P.3d 98 (2024) (quoting *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009)). The finality requirement for res judicata is "quite similar" to the finality requirement for appellate review. *Ensley*, 152 Wn. App. at 900. Under this framework, a judgment is final if it "is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. b (1982)).

The state court's order appointing a receiver is not final for purposes of res judicata. Rather than representing the completion of all steps in the adjudication of the claim at issue in this action, the state court's order appointing a receiver marked just one of the initial steps in the Receivership Action. An order appointing a receiver is not a judgment and is subject to modification or termination in light of new facts. *See Bero,* 195 Wn. App. at 179–80. The state court's order was reviewable by discretionary interlocutory appeal, but was not appealed. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. b (1982) ("The fact that a trial court order may be reviewable by interlocutory appeal . . . does not necessarily mean that the matter resolved in the order should be treated as final for purposes of res judicata."). The Court concludes that the state court's order appointing a receiver, which marked an early stage in the Receivership Action, is not a final judgment for purposes of res judicata.

**D. <u>Full Faith and Credit</u>**

The Deckers finally argue that the Court must give full faith and credit to the state court's order. *See* Mot. for Partial SJ at 39–40 (docket no. 50). As KeyBank correctly

recognizes, however, the Full Faith and Credit Act simply requires federal courts to apply state preclusion law to state court orders. *See* Resp. to Mot. for Partial SJ at 22 (docket no. 56) (citing 28 U.S.C. § 1738). As such, full faith and credit is not an independent basis for summary judgment.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Deckers' motion for partial summary judgment, docket no. 50, is DENIED. KeyBank is not precluded from asserting an interest in funds from the Absher Project.

(2) Within ten (10) days, Absher shall file a declaration that identifies the account now holding the Second Absher Payment, the amount in the account, and the terms of the deposit. The Court ORDERS Absher to maintain the deposited funds in this account during the pendency of these proceedings, subject to further order of the Court.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 17th day of November, 2026.

Thomas S. Zilly
United States District Judge